UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| NANCY SLICE, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>CHOICEDATA CONSUMER SERVICES, )<br>INC., EQUIFAX INFORMATION )<br>SERVICES, LLC, HFC OF NEVADA, and/or )<br>HOUSEHOLD RECOVERY SERVICES, INC., )<br>and HOUSEHOLD BANK, FSB, )<br>)<br>    Defendants. ) | No.: 3:04-CV-428<br>(VARLAN/GUYTON) |

## **MEMORANDUM OPINION**

This civil action is before the Court on plaintiff's Motion to Amend Affidavit [Doc. 69] and two pending dispositive motions: defendant ChoiceDATA Consumer Services, Inc.'s Motion for Summary Judgment [Doc. 20] and defendant Equifax Information Services LLC's Motion for Summary Judgment [Doc. 24]. Both defendants argue that there are no genuine issues of material fact and they are entitled to judgment as a matter of law. After an extended period of time passed, plaintiff moved for and was granted additional time to respond to the pending dispositive motions. The defendants have filed reply briefs and the motions are now ripe for determination.

The Court has carefully considered the pending motions and related pleadings [Docs. 21, 27, 40, 41, 46, 48, 49, 50, 51, 52, 55, 68] as well as the arguments of counsel presented on February 28, 2006, in light of the entire record and controlling law. For the reasons set forth herein, the plaintiff's motion to amend will be **GRANTED**, the defendants' motions for summary judgment will be **GRANTED**, and the claims against these defendants will be **DISMISSED with prejudice**.

**I.     Relevant Facts**

This case was removed from the Circuit Court for Knox County, Tennessee, on September 16, 2004 [Doc. 1]. In the Amended Complaint [Doc. 31], plaintiff Nancy A. Slice asserts claims under the Fair Credit Reporting Act ("FCRA") against defendants ChoiceDATA Consumer Services, Inc. ("ChoiceDATA"), Equifax Information Services, LLC ("Equifax"), HFC of Nevada and/or Household Recovery Services, Inc., and Household Bank, FSB.[1]  Plaintiff has alleged that defendants are consumer reporting agencies and they distributed a consumer report that contained inaccurate information about a non-existent debt owed by plaintiff to Household Finance.

Equifax and ChoiceDATA are consumer reporting agencies. Equifax stores and maintains credit files on a computer system known as the Automated Credit Reporting On-line Package or "ACROPAC." Although Equifax stores all credit files on the ACROPAC system, it does not own or maintain all of the credit files stored on the ACROPAC system. Some of the credit files stored on the ACROPAC system are owned and maintained by affiliates of Equifax such as ChoiceDATA. Affiliates are companies (separate and distinct from Equifax) that own credit files on individuals residing in a particular geographic territory in the United States. Affiliates contract with Equifax to store their credit files on the ACROPAC system. At all material times to this case, ChoiceDATA was an affiliate of Equifax.

Equifax does not investigate a consumer's dispute when an affiliate such as ChoiceDATA owns that consumer's file. If Equifax receives a dispute letter regarding a credit file owned by an affiliate such as ChoiceDATA, it is Equifax's policy and procedure to forward that correspondence

---

[1] Plaintiff's claims against Equifax, Inc. have been dismissed with prejudice [*see* Docs. 33, 34].

2

immediately to the correct affiliate. Under Equifax's policies and procedures, any mail received by Equifax from plaintiff should have been forwarded to ChoiceDATA immediately upon receipt by Equifax.

Equifax does not maintain or service credit files owned by ChoiceDATA. Rather, ChoiceDATA is responsible for maintenance and service, including conducting reinvestigations, on credit files it owns. ChoiceDATA owns thousands of credit files on individuals residing in Knoxville, Tennessee. ChoiceDATA maintains the credit files it owns, including the credit file on the plaintiff. The record contains a portion of a contract between ChoiceDATA and Equifax which provides that ChoiceDATA is "the sole and exclusive owner of credit account data designated as belonging to" ChoiceDATA in the ACROPAC system. [Doc. 55, Ex. A.]

On or about March 28, 2002, Household Bank sent an unsolicited check in the amount of $7,032.68 payable to "Nancy Slice" at 919 Olive Road, Knoxville, Tennessee 37922. This check contained plaintiff's social security number. Plaintiff and her husband, Stephen Dale Slice, owned the property at 919 Olive Road and had lived there for nine years before moving to 9813 West Emory Road approximately eighteen months earlier. Plaintiff's daughter, Nancy Lynne Slice, lived at the 919 Olive Road residence in the March to April 2002 time frame. Plaintiff's daughter received and cashed the check from Household Bank.

ChoiceDATA received three consumer disputes from plaintiff Nancy A. Slice, all of which concerned an account listed by Household Bank FSB, and related entities (collectively referred to as "HFC"). ChoiceDATA received the first dispute from plaintiff on or about August 27, 2002, a Research Request Form in which she stated the HFC account was "not mine" and "may be my daughter Nancy L. Slice - DOB 4-7-76." [Doc. 1, Complaint, Ex. 1.] ChoiceDATA contacted HFC

3

through its automated consumer dispute verification system, a computerized system that allows electronic communications between ChoiceDATA and furnishers of consumer credit information. The record contains a Consumer Dispute Verification form dated August 28, 2002, which indicates that ChoiceDATA communicated plaintiff's comments to HFC as follows: "NOT HIS/HERS. PLEASE PROVIDE COMPLETE ID." [Doc. 20, Dep. Ex. 3.] This document further indicates that HFC confirmed the account in plaintiff's name with plaintiff's social security number at the 919 Olive Road address. The document further indicated a delinquent balance on the account of $6,901.00. This information was promptly provided to the plaintiff.

On or about May 18, 2003, plaintiff submitted a second dispute of the HFC account to ChoiceDATA. [*Id*., Dep. Ex. 7.] Plaintiff complained that "[t]he company has the wrong person with the same first and last name." [*Id*.] The Automated Consumer Dispute Verification form dated May 21, 2003, indicates that ChoiceDATA communicated plaintiff's comments to HFC that the account was "NOT HIS/HERS. PLEASE PROVIDE COMPLETE ID MUST VER SS#. SM NAME BUT NOT ME." [*Id*., Dep. Ex. 7.] This document also indicates that HFC replied by confirming all of the data concerning the account that had previously been confirmed, including the past due balance of $6,901.00. ChoiceDATA again communicated these results to the plaintiff.

After receiving the results from ChoiceDATA's second investigation, plaintiff contacted HFC. HFC offered to settle the matter with plaintiff for $4,000.00. [Doc. 31, Ex. A.] In exchange, HFC agreed to notify the credit bureau and delete this trade line. Plaintiff agreed and paid HFC $4,000.00.

On or about May 3, 2004, plaintiff submitted a third dispute of the HFC account to ChoiceDATA. Plaintiff's letter to ChoiceDATA advised that "[t]he company has my daughter with

4

the same first and last name and she did sign for the money. As of May 30, 2003, I had this resolved with the company and they were to delete the trade line from my credit reports." [Doc. 20, Dep. Ex. 14.] The Automated Consumer Dispute Verification form dated May 6, 2004, indicates that ChoiceDATA communicated plaintiff's comments to HFC that the account was "NOT HIS/HERS. PLEASE PROVIDE COMPLETE ID DAUGHTER'S ACCOUNT." HFC replied confirming again the account was plaintiff's account by indicating the same social security number and, on this occasion, showing an updated address of 9813 West Emory Road. The balance due had been reduced to $2,901.00. ChoiceDATA promptly communicated the results of this investigation to the plaintiff.

Other than the three consumer dispute verification forms referenced above, ChoiceDATA did not receive any further or different information concerning plaintiff from HFC. ChoiceDATA did not receive a letter or other communication from HFC directing that the HFC account information be deleted from plaintiff's credit report. HFC continued to report the delinquency of $2,901.00 as an account owed by plaintiff even after this lawsuit was filed. Plaintiff did not provide ChoiceDATA with copies of any correspondence she exchanged with HFC prior to the filing of this case, including any check by which payment was made to HFC nor a copy of any receipt from HFC indicating payment on the account. Subsequent to the filing of this lawsuit, ChoiceDATA directed that the HFC information be removed from plaintiff's credit report and it was.

This case was filed on August 20, 2004. Equifax received a letter from plaintiff on or about September 14, 2004, asking Equifax to add a consumer statement to her credit report regarding the HFC account. Equifax then forwarded the letter to ChoiceDATA for handling. On September 17, 2004, ChoiceDATA received the letter from plaintiff that had originally been sent to Equifax in

Atlanta requesting that a consumer statement of dispute be added to her credit report concerning the HFC account.

**II.     Plaintiff's Motion to Amend**

On February 27, 2006, one day prior to the hearing on the pending summary judgment motions, the plaintiff filed a motion to amend the affidavit of Tom Wilson [Doc. 69] on the grounds that the defendants have created an issue regarding the original affidavit of Mr. Wilson and that it took a substantial amount of time to obtain the amended affidavit. No response or opposition to this motion has been filed and the time for doing so has passed. *See* L.R. 7.1(a), 7.2.

Although it is unclear why the proffered reasons justify the relief requested, the Court will nevertheless **GRANT** plaintiff's motion [Doc. 69] and consider the amended affidavit of Tom Wilson to the extent it is relevant in reviewing the pending motions for summary judgment.

**III.    Defendants' Motions for Summary Judgment**

A.    <u>Standard of Review</u>

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing there is no genuine issue of material fact lies upon the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937,

6

Case 3:04-cv-00428   Document 71   Filed 03/16/06   Page 6 of 14   PageID #: 51

942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter. *Id.* at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

    B.  <u>Claims Against Equifax Information Services, LLC</u>

Equifax argues that it is entitled to summary judgment because it does not have a duty to reinvestigate consumer disputes on credit files owned by affiliates such as ChoiceDATA. Thus, Equifax contends it was not responsible for conducting reinvestigations on plaintiff's credit file owned, maintained, and serviced by ChoiceDATA. Equifax also points out that plaintiff did not ask Equifax to reinvestigate the Household account, but instead asked Equifax to place a consumer statement on her file which Equifax forwarded to ChoiceDATA for handling. Thus, Equifax argues that plaintiff cannot show it was negligent in the handling of her credit file by simply forwarding one letter to ChoiceDATA that was not even a dispute, but a "consumer statement" to be added to her credit report.

7

It is undisputed that Equifax is a "consumer reporting agency" as defined by the FCRA.[2] Section 1681e(b) of the FCRA requires a consumer reporting agency to follow reasonable procedures in preparing a consumer report to assure maximum possible accuracy of the information. 15 U.S.C. § 1681e(b). The statute also imposes a duty on consumer reporting agencies to conduct a reasonable reinvestigation into any item that is disputed by a consumer. 15 U.S.C. § 1681i(a)(1)(A). Thus, the initial issue raised by Equifax is whether it was obligated under § 1681i to perform an investigation or reinvestigation of plaintiff's dispute regarding the HFC account. Equifax contends it had no such obligation because plaintiff's credit file is owned, maintained, and serviced by ChoiceDATA

Equifax has relied on a recent decision from the United States District Court for the Southern District of Texas, *Kenneth M. Morris v. Equifax Information Services, LLC and CSC Credit Services, Inc.*, No. H-04-0423 (S.D. Tex. June 10, 2005), in which that court, addressing the same issue, concluded that "the consumer reporting agency that owns the consumer's file and has the authority to modify the information therein is the only agency obligated by section 1681i to reinvestigate the challenged credit report."[3] [Doc. 27, Ex. M at p. 12.] Thus, because Equifax did not own the plaintiff's credit file and had no ability to make changes to the credit file, Equifax could

---

[2] A "consumer reporting agency" is defined by the FCRA as:
> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

[3] The opinion cited is a Memorandum and Recommendation filed by United States Magistrate Judge Nancy K. Johnson. The Memorandum and Recommendation was adopted by United States District Judge David Hittner on June 28, 2005.

8

not perform all of the duties required by the statute and the claims against Equifax were dismissed. [*Id.*] *See also Zotta v. NationsCredit Financial Services Corp.*, 297 F. Supp. 2d 1196, 1206 (E.D. Mo. 2003) ("In light of plaintiffs' concession that Equifax does not own and maintain plaintiffs' credit files ... the court concludes Equifax is entitled to summary judgment.").[4]

Thus, applying *Morris* and *Zotta* to the present case, Equifax likewise argues that plaintiff's credit file is owned, maintained, and serviced by ChoiceData and only ChoiceData could respond to plaintiff's requests for reinvestigation. Equifax also argues that it cannot be found to be negligent by simply forwarding plaintiff's request for a "consumer statement" to be added to her credit report.

In response, plaintiff argues that Equifax cannot escape liability by merely relying on HFC's efforts to verify the information on plaintiff's account. Plaintiff notes that she sent a letter to Equifax advising that the disputed item had been removed by other credit agencies. Plaintiff contends that this letter should have prompted Equifax to investigate further rather than rely on a computer reporting program from HFC. Plaintiff argues that the *Morris* case is inapplicable because the Texas court focused only on the consumer reporting agency's responsibility to evaluate credit information, whereas the statute also applies to consumer reporting agencies who "assemble ... credit information." [Doc. 51 at p. 9, quoting 15 U.S.C. § 1681a(f).] Plaintiff also contends that, contrary to the facts in *Morris*, the correspondence she received from Equifax indicated that Equifax had taken some action in the reinvestigations.

In reply [Doc. 55], Equifax reiterates that it does not own all of the credit files stored in its

---

[4]Both Equifax and the *Morris* decision cite to *Bruce v. First U.S.A. Bank, Nat'l Ass'n*, 103 F. Supp. 2d 1135, 1140 (E.D. Mo. 2000), as additional authority for the proposition that Equifax is not responsible for performing a reinvestigation of a consumer dispute on credit files it does not own. However, this statement of the *Bruce* Court is contained in the factual findings and does not appear to be a legal conclusion based on an issue in dispute.

9

computer system. Affiliates such as ChoiceData "rent space" on the Equifax computers for their files and contract for Equifax to perform certain processing services on those files. Equifax further contends that the only contact it received from plaintiff was her request to add a "consumer statement" to her credit report, which was forwarded to ChoiceData for handling. Equifax emphasizes that all other communication was between plaintiff and ChoiceData and Equifax had no other involvement.

In addition to *Morris* and *Zotta*, the Court has reviewed the decision in *Gohman v. Equifax Information Services, LLC*, 395 F. Supp. 2d 822 (D. Minn. 2005). In that case, the district court declined to follow *Zotta* and hold that Equifax is not subject to § 1681e "merely because it does not own or maintain plaintiff's file." *Id*. at 826 n.3. The *Gohman* Court further held:

> Section 1681e(b) is not limited to CRAs [credit reporting agencies] who own and maintain credit files. Instead, it covers all CRAs who prepare credit reports. It is undisputed that Equifax is a CRA. Further, plaintiff has brought forth evidence showing that Equifax prepared her consumer reports.... Therefore, section 1681e(b) requires Equifax to "follow reasonable procedures to assure maximum possible accuracy" of the information on her report.

*Id*. In the present case, there is no evidence that Equifax conducted, or was asked to conduct, an investigation on plaintiff's credit report and Equifax did not prepare any of the consumer reports at issue in this case. Although the results of the investigations indicate that the information has been "verified to Equifax," these documents also contain the signature name and address of ChoiceDATA. Further, the only evidence in the record of any communication between plaintiff and Equifax is her letter requesting the addition of a consumer statement to her credit report.

After careful consideration of these authorities and in the absence of any controlling authority from the Sixth Circuit, the Court agrees that Equifax cannot be liable for violating § 1681e(b) or § 1681i(a)(1) when it does not own plaintiff's file, when it has no authority to alter the

10

information on her file, and when it did not prepare any of the disputed consumer reports in this case. Because Equifax did not prepare any of the consumer reports in this case it could not have failed to follow reasonable procedures to assure the accuracy of the information in those reports. Similarly, because Equifax does not own plaintiff's credit file, it cannot be liable for conducting a reinvestigation of that file. Accordingly, Equifax is entitled to judgment as a matter of law and the Court need not address the remaining arguments raised by Equifax.

       C.       <u>Claims Against ChoiceDATA Consumer Services, Inc.</u>

ChoiceDATA argues that plaintiff cannot establish an FCRA violation because the information reported by ChoiceDATA was accurate. Alternatively, ChoiceDATA argues that even if plaintiff could prove that the reported information was inaccurate, it is undisputed that ChoiceDATA followed reasonable procedures as required by the FCRA. Finally, ChoiceDATA argues that it properly reinvestigated the disputed account and that plaintiff cannot show a willful violation of the FCRA.

Plaintiff's opposition to ChoiceDATA's motion summarily argues that the information reported by ChoiceDATA was inaccurate, "first as to the amount and later as to everything else." [Doc. 41 at p. 2.] Plaintiff further argues that ChoiceDATA did not follow reasonable procedures to ensure maximum accuracy and did not further investigate the information received from HFC. Plaintiff agrees that ChoiceDATA promptly reinvestigated, but disputes that they accurately reported the results.

In reply, ChoiceDATA argues that plaintiff's affidavit [Doc. 48] and the Affidavit of Tom Wilson [Doc. 49] submitted with plaintiff's response are largely inadmissible and should not be considered by the Court. [Doc. 46.] Defendant argues that plaintiff's affidavit contains argument

11

and/or legal conclusions. Defendant further contends that the plaintiff's affidavit contains indamissible hearsay inasmuch as it repeats statements made by plaintiff's daughter. Defendant argues that Mr. Wilson's affidavit should not be considered because he was never disclosed as a witness in plaintiff's initial disclosures or in response to written discovery. Defendant also argues that Mr. Wilson's affidavit repeats many of plaintiff's arguments and contains speculation and conjecture. Finally, defendant argues that Mr. Wilson's affidavit is misleading with respect to the efforts of plaintiff and her husband to finance the purchase of two houses in one transaction.

As noted in ChoiceDATA's initial brief, plaintiff appears to allege that ChoiceDATA has violated both § 1681e(b) and § 1681i(a) of the FCRA. Section 1681e(b) of the FCRA states as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b). It is clear that a showing of inaccuracy is an essential element of a claim under the FCRA. *Spence v. TRW, Inc.*, 92 F.3d 380, 382 (6th Cir. 1996). However, § 1681e(b) does not impose strict liability for inaccurate entries in consumer reports. *Id*. at 383. Instead, the preparer is held only to a duty of reasonable care. *Id*. The exercise of reasonable care is determined by reference to what a reasonably prudent person would do under the circumstances. *Id*; *Bryant v. TRW, Inc.*, 689 F.2d 72, 78 (6th Cir. 1982).

In the present case, the record reveals that ChoiceDATA accurately reported the information it received from HFC to plaintiff despite her arguments to the contrary. The issue is whether ChoiceDATA also exercised a duty of reasonable care. The facts show that plaintiff requested ChoiceDATA to perform an investigation of the HFC account on three occasions. Upon receipt of

12

each request, ChoiceDATA promptly contacted HFC with plaintiff's concerns and then promptly communicated HFC's responses to plaintiff. Indeed, the record reflects that ChoiceDATA did more than simply inquire about the status of the HFC account each time, but rather passed on plaintiff's specific allegations about the account with each request. Each individual request as well as the pattern of requests indicates that ChoiceDATA exercised reasonable care in promptly conveying plaintiff's claims to HFC and promptly providing HFC's responses to plaintiff. Accordingly, based on these facts and the standard set by the Sixth Circuit, the Court concludes that ChoiceDATA cannot be liable for a violation of § 1681e(b) inasmuch as it reported accurate information and followed reasonable procedures in doing so. Thus, ChoiceDATA is entitled to summary judgment on this claim.

> Section 1681i(a)(1)A) provides in part as follows:
>
>> ...if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file ... .

15 U.S.C. § 1681i(a)(1)(A). It is unclear whether a showing of inaccuracy is required for liability under § 1681i. *Dickens v. Trans Union Corp.*, 18 Fed. Appx. 315, 319, 2001 WL 1006259 at *3 (6th Cir. Aug. 23, 2001). Nevertheless, the plain language of the statute requires the plaintiff to demonstrate that ChoiceDATA's reinvestigations were not reasonable. Plaintiff argues that ChoiceDATA did not follow reasonable procedures because they did not investigate further beyond repeating HFC's responses. However, plaintiff's complaint is not really with ChoiceDATA's procedures, but with the information received from HFC. The information from HFC, as previously noted, was correctly reported to ChoiceDATA. The HFC account was in plaintiff's name and under

13

plaintiff's social security number. It is unclear what else ChoiceDATA could have done or how it failed to meet the requirements of § 1681i. *See Dickens*, 2001 WL 1006259 at *4. As suggested by defendant's counsel, the language of § 1681i(a)(1)(A) requiring the consumer reporting agency to "record the current status of the disputed information" contemplates that there may be a dispute between the consumer and the creditor about the information and that it is not the consumer reporting agency's duty to resolve that dispute. The Court agrees and finds that ChoiceDATA cannot be liable for a violation of § 1681i under these facts. ChoiceDATA is entitled to summary judgment on this claim and the Court need not address ChoiceDATA's remaining arguments, including the asserted deficiencies in plaintiff's and Mr. Wilson's affidavits.

**IV. Conclusion**

For the reasons set forth herein, the plaintiff's motion to amend affidavit [Doc. 69] will be granted, defendant Equifax Information Services' motion for summary judgment [Doc. 24] will be granted, and defendant ChoiceDATA Consumer Services' motion for summary judgment [Doc. 20] will be granted. An order reflecting this opinion will be entered.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE